**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RODNEY ANDERSON,                    :
                                    :
     Plaintiff                  :
                                    :        CIVIL NO. 3:CV-14-1792
  v.                              :
                                    :        (Judge Caputo)
T. BICKELL, *et al.*,               :
                                    :
     Defendants                 :


**M E M O R A N D U M**

**I.     Introduction**

Presently before the Court are Defendants' motions to dismiss Mr.

Anderson's Amended and Supplemental Complaint.  The Pennsylvania Department

of Corrections (DOC) defendants have filed separate motions to dismiss addressing

the Amended Complaint and the Supplemental Complaint,[1] while T. Parkes (Corizon

employee) has filed a motion to dismiss the Amended Complaint.  All motions have

been briefed and are ripe for consideration.

For the reasons that follow, the Court will grant the Defendants' motions to

dismiss the Amended and Supplemental Complaints.

---

[1] Mr. Anderson's Supplemental Complaint names several new defendants and raises new claims that he admits accrued after he filed his original complaint.  The new defendants were not served with the Supplemental Complaint.  The Court will address the claims against these individuals within this memorandum pursuant to our screening authority under 28 U.S.C. § 1915.

## II.    Procedural History

On August 18, 2014, Mr. Anderson filed his original Complaint in this matter

against fourteen defendants who worked at two different correctional facilities:  SCI-

Camp Hill and SCI-Huntingdon.  The majority of the defendants were employed by

the DOC, while others were employed by Corizon Medical Services (Corizon), the

contract medical care providers at SCI-Huntingdon.[2]  (ECF No. 1, Compl.)

On March 30, 2016, the Court granted in part, and denied in part, the DOC

and Corizon defendants' motions to dismiss.  *See* ECF Doc. 51.  In the Order, Mr.

Anderson was specifically advised as to which claims were dismissed with prejudice

and those he could reassert in an amended complaint.  (*Id*., pp. 29 - 30.)  The

following claims were dismissed as time barred as they accrued prior to August 18,

2012:  (1) all claims against the SCI-Camp Hill defendants (J. Ditty; PA Dieburt; T.

Henry; K. Moore; and I. Taggart) as Mr. Anderson was transferred to SCI-

Huntingdon on August 30, 2011; (2) pre-August 18, 2012, claims related to the

release of Plaintiff's medical records (I. Taggart; K. Jackson; C. Stubler; and C.

Green); (3) Eighth Amendment medical claims concerning the scheduling of an

October 2011 orthopedic consult, physical therapy or an MRI (M. Showalter; C.

Boozel; and T. Parkes); (4) Eighth Amendment claims related to Grievance 407311

concerning his knee injury (C. Green; M. Showalter; Supt. Bickell; and C. Boozel)

---

[2]  Named in the original complaint were the following DOC employees:  T. Bickell; J.
Ditty; T. Henry; L. Dieburt; K. Nicole (identified by DOC counsel as Kerri Moore); I. Taggart
(identified by DOC counsel as I. Taggart); M. Showalter; K. Jackson; C. Stabler (identified
by DOC counsel as C. Stubler); C. Riscigno; C. Green and B. Jeshonek.  The Corizon
medical defendants were: C. Boozel and T. Parkes.

and (5) any pre-August 18, 2012 claims related to Mr. Anderson's receipt of a bottom bunk/bottom tier status (PA Riscigno).  (*Id*., pp. 11 - 17.)

Mr. Anderson's post-August 18, 2012 claim that K. Jackson, or any other defendant, violated his Eighth Amendment rights by denying him access to his medical records was dismissed with prejudice for failure to state a claim.  (*Id*., pp. 20 - 22.)

The following post-August 18, 2012, claims were subject to dismissal without prejudice and thus were permitted to be re-plead: (1) Eighth Amendment medical claims against Supt. Bickell, M. Showalter, C. Green, C. Stubler, PA Riscigno, C. Boozel and T. Parkes "for events that accrued between August 18, 2012 and August 18, 2014."  (*Id*., pp. 17 and 27); (2) Plaintiff's access-to-courts claim against Librarian Jeshonek; and (3) Plaintiff's Americans with Disabilities Act (ADA) claim against the SCI-Huntingdon defendants.  (*Id*.)

C. Boozel, a Corizon employee, sought dismissal of the Complaint based on improper service.  (ECF No. 20.)  His motion was denied  (ECF No. 51, pp. 24 - 25) after it was noted that the Court, not Plaintiff, was responsible for any errors in service.  (*Id*., p. 25.)  Nonetheless, all claims against C. Boozel were dismissed as time-barred.  Mr. Anderson was advised C. Boozel would be served with a copy of the amended complaint, if warranted, after the Court screened it pursuant to 28 U.S.C. § 1915.

Mr. Anderson was granted twenty-one days to file an amended complaint. (*Id*., p. 30.)  He was then granted an enlargement of time to file his amended

complaint. (ECF No. 55.) After he failed to file an amended complaint or seek

additional time to do so, the Court closed the case. (ECF No. 56.) After Mr.

Anderson indicated his amended complaint was either lost or delayed in the mail,

the matter was reopened. (ECF No. 63.)

On July 21, 2016, Mr. Anderson filed an Amended Complaint (ECF No. 64)

and a Supplemental Complaint (ECF No. 64-1), and sixty-four pages of supporting

exhibits (ECF No. 64-2).[3]

### III. Allegations of the Amended and Supplemental Complaint [4]

### A. Amended Complaint (ECF No. 64)

Named as Defendants are the following DOC Defendants: Supt. Bickell; K.

Nicole (previously identified as Kerri Moore); C. Green, Unit Manager Hollibaugh; M.

Showalter; acting Supt. J. Eckard; B. Jeshonek and Father Wireman. The following

Corizon employees are named: C. Boozel; K. Jackson; T. Parkes; M. McConnell;

M. Gomes and P. Price.[5]

---

[3] As DOC defendants C. Stabler and C. Riscigno are not named in the Amended or Supplemental Complaint, they were terminated from the action on July 27, 2016.

[4] Mr. Anderson submits 64 pages of exhibits in support of his Amended and Supplemental Complaints. (ECF No. 64-2.) He does not specifically connect any defendants or claims with his exhibits. To the extent Mr. Anderson's claims are based on the attached exhibits, they will be considered. *Pension Benefit Guar. Corp,* 998 F.2d at 1196.

[5] Supt. Eckard, M. McConnell, M. Gomes, P. Price, Unit Manager Hollibaugh, Father Wireman, Amanda West and Dorina Varner are new defendants and have not been served with the Amended or Supplemental Complaint.

-4-

Mr. Anderson arrived at SCI-Camp Hill on April 5, 2011 to commence serving his state sentence.  (ECF No. 64, p. 2.)  In July 2011, while at SCI-Camp Hill, he fell injuring his back, right wrist and knee.  (*Id*., ¶ 14.)

On August 30, 2011, Mr. Anderson was transferred to SCI-Huntingdon.  (*Id*.) Upon his arrival he advised medical staff that he was a diabetic and was suffering from pain from his July fall.  (*Id*., ¶ 15.)  On September 25, 2012, Mr. Anderson underwent corrective surgery for his wrist injury.  (ECF No. 64, ¶ 17 and ECF No. 64-2, p. 31.)  Two days later, "because he did not get a medical lay-in," Mr. Anderson was "forced" to return to work in the kitchen "under penalty of receiving a misconduct."  (*Id*.; ECF No. 64-2, pp. 33 - 34.)  Consequently he re-injured his wrist. (ECF No. 64, ¶ 17.)  He was then placed on medical lay-in until cleared by his doctor.  (ECF No. 64-2, p. 33.)   In response to his inquiry, CHCA Showalter advised Mr. Anderson he would not receive "lay-in" pay as his injury was not work related. (*Id*., p. 34.)  Mr. Anderson was cleared for "light duty" work on November 7, 2012. (*Id*., p. 35.)  Although prescribed Percocet by his physician, prison staff provided him Tylenol 3, which was "cut off" on November 10, 2012.  (*Id*.)  On November 27, 2012 his medication was reordered.  (*Id*.)  In January or February 2013, Mr. Anderson underwent a second corrective surgery to his wrist.  (*Id*., p. 4.)

"During all of this time," Mr. Anderson complained of blurred vision, back and knee pain.  (ECF No. 64, ¶ 18.)  He "is a diabetic and was refused insulin for over 3 years" as well as a "correct diabetic diet."  (*Id.,* ¶¶  23 - 24.)  His elevated triglyceride levels were ignored by medical staff for "well over a year."

In September 2013, Mr. Anderson requested to be seen by a physician rather than a physician assistant because the "physician assistant only switch [his] medication constantly with no results" on his high sugar and triglycerides.  (ECF No. 64-2, p. 23.)  He disagrees with the physician assistant's statement that he is a "borderline diabetic."  (*Id*.)  CHCA Price advised Mr. Anderson to sign up for sick call to schedule an appointment with a physician.  (*Id*.)

On January 24, 2014, Mr. Anderson wrote to CHCA Price asking to be seen by a physician because a physician assistant had changed his insulin resulting in higher sugar levels.  (*Id*., p. 24.)  He advised CHCA Price that he "wishes only to be seen by the doctor about [his] sugar and triglycerides."  (*Id*.)  CHCA Price advised Mr. Anderson to sign up for sick call to schedule an appointment with the physician. (*Id*.)

Mr. Anderson claims he has not received proper treatment for a torn meniscus in his right knee.  (ECF No. 64, ¶ 19.)  Mr. Anderson has held a bottom bunk/bottom tier housing designation, at the request of SCI-Huntingdon medical staff, due to right knee pain "possible meniscus tear" and later bilateral "degenerative knee joints" since March 2012.  (ECF No. 64-2, pp. 47 - 48, 50 - 52, 55.)  He has received knee braces or sleeves as early as August 2012.  (*Id*., pp. 53 - 54, 56 - 62.)  Mr. Anderson alleges that once given the bottom bunk/bottom tier designation, he "cannot go beyond the first floor of any building inside the prison, you are not permitted to climb stairs".  (ECF No. 64, ¶ 21.)  Any violation of this restriction subjects him to "receiving a misconduct."  (*Id*.)

SCI-Huntingdon's law library is on the second floor of the institution.  (*Id*., ¶ 28.)  The chapel is located on the fourth floor.  (*Id*., ¶ 25.)  Although "medically restricted," Mr. Anderson is forced make the painful trek to the upper floors of the institution to access religious, psychological, school, dental, parole, and psychiatric services.  (*Id*., ¶ 22.)  He claims that SCI-Huntingdon's failure to provide these services for "disabled, restricted, disability, and handicap inmates" on the ground level is discriminatory.  (*Id*.)

Mr. Anderson was continually advised that if he felt his medical issues prevented him from accessing areas of the institution, he should address his concerns with the medical department.  (ECF No. 64-2, pp. 19 - 22.)  He was also advised that "accommodations are made on individual basis for inmates who need it."  (*Id*., p. 21.)  In June 2013, Superintendent Bickell advised Mr. Anderson that the DOC's Central Office Inmate Disability Accommodations Committee had reviewed, and denied, his request for "an accommodation in accordance with DC ADM 006 Reasonable Accommodations for Inmates and Disabilities" after determining that his "medical condition does not rise to the level of a disability." (ECF No. 64-2, p. 49.)

From August 2012 through 2015, Mr. Anderson worked in SCI-Huntingdon's kitchen.  (*Id*., p. 63.)  He claims that because religious services and law library are both open Sunday morning at the same time, he is forced to chose between foregoing his religious practices or using the law library to access the courts.  (ECF No. 64, ¶ 25.)  On January 4, 2013, Mr. Anderson requested to be scheduled for the law library on Mondays.  For scheduling reasons he was given a Wednesday

afternoon appointment.  He then wrote to the library staff advising them that because of his work schedule he only has Sunday and Monday off.  (ECF No. 64-2, p. 36.)  As such, he needs to be scheduled for the law library on Monday morning and afternoon as he "can't go on Sunday (religion)."  (*Id*.)  He was then scheduled for Monday.  Mr. Anderson advised the library staff that he works "Tuesday through Saturday in the morning and Thursday is [his] commissary day and [he has] to go to commissary in the afternoon because [he] work[s] on Thursday morning."  (*Id*., p. 37.)  He complained that staff scheduled him for "whatever day [they chose] instead of giving [him] the day [he] requested."  (*Id*.)  Staff replied that he could not dictate library scheduling and that where his scheduled time conflicts with his work, school or programming schedule he should advise staff.  (*Id*.)

On May 8, 2013, Mr. Anderson's request to be placed on the Tuesday morning law library list was denied due to lack of available space.  He was advised that he could be scheduled for another day.  (*Id*., p. 40.)  His May 17, 2013, request to be scheduled for Tuesday and Wednesday mornings so he could go to library with someone who was helping him on a pro se appeal was also denied.  (*Id*., p. 41.)  However, he was scheduled for Friday morning that week and advised there were legal aides to assist him.  (*Id*.)  After Mr. Anderson advised library staff he worked Friday mornings, he was scheduled for a Tuesday evening slot.  (*Id*., p. 42.)  Mr. Anderson then wrote to law library staff asking "[h]ow hard is it to put a person on a call-out for the exact day and time they request?"  (*Id*.)  He sought to be removed from the Tuesday night list and placed on the Tuesday and Wednesday

morning list.  (*Id*.)  Staff advised him that the time he requested was full and he was scheduled for law library time "according to your work, programs, or school ... but specific days can not always be scheduled."  (*Id*.)  In June 2013 Mr. Anderson requested that his Tuesday night law library slot be switched to Tuesday and Wednesday mornings.  His request was denied as those time slots were filled.  (*Id*., p. 44.)

On August 20 and 21, 2013, Mr. Anderson's law library appointments were cancelled by staff after he failed to show for his scheduled law library times on August 13 and 14, 2013.  (*Id*., p. 45.)  He claims he missed these scheduled times because he had medical appointments.  Library staff asked Mr. Anderson to have medical staff verify this information. (*Id*.)  Mr. Anderson missed his law library appointment on January 10, 2014 because he had a tooth pulled and his law library appointment on January 16, 2014, because he had the flu.  (*Id*., p. 46.)  As requested by Mr. Anderson, CHCA Price confirmed this information for him to show the law library staff.  (*Id*.)

In January 2015, Mr. Anderson advised law library staff that his work schedule had changed.  His previous days off were "Thursday and Friday" but now were "Tuesday and Wednesday".  (*Id*., p. 38.)  He requested staff to change his scheduled time in the law library.  (*Id*.)  He was then scheduled for Tuesday evening and Thursday morning.  (*Id*.)  Later that week he wrote to staff asking to switch his scheduled library time and has a court deadline to meet.  (*Id*., p. 39.)  Library staff

scheduled him for Tuesday, Wednesday and Thursday evening "until your deadline 2/9/15." (*Id.*)

Next, Mr. Anderson claims Ms. Hollibaugh, his Unit Manager, does not assist him to resolve issues but refers "all of his grievances to the grievance coordinator until after he filed this lawsuit." (ECF No. 64, ¶ 26.)

Finally, Mr. Anderson alleges that he has unsuccessfully tried to receive a copy of his medical records since his arrival at SCI-Huntingdon in August 2011. On December 12, 2013 he requested a copy of his medical and mental health records be sent to Angus Love, Esquire, of the PA Institutional Law Project. (ECF No. 74, p. 6.) K. Jackson witnessed his completion of the appropriate records request form but Mr. Anderson claims he has yet to receive the records. Defense counsel in this case, in response to Mr. Anderson's discovery request for his medical records, made them available for his review on August 13, 2015. (ECF 64-2, p. 1.) Mr. Anderson has not filed a motion to compel the production of his medical records for inspection and copying.

### B.    Supplemental Complaint (ECF No. 64-1)

Mr. Anderson adds new claims and new defendants to his action in his Supplemental Complaint "due to issues and problems that the plaintiff has had after filing his original complaint against the Corrections Defendants." (ECF No. 64-1.) The newly named defendant to the action, although mentioned in the Amended Complaint and exhibits attached to the Amended Complaint are:  M. McConnell, M.

Gomes, P. Price, Hollibaugh, J. Eckard, Father Wireman, Amanda West and Dorina Varner.  (*Id*., p. 1.)

McConnel, Gomes and Price are Corizon employees who work at SCI-Huntingdon.  (*Id*., ¶ 5.)  Mr. Anderson argues that each medical staff member is required to review his medical records before treating him.  (*Id*., ¶ 17.)  He claims their signature in his medical records, request slips and grievances make them "legally responsible" to properly diagnose him, avoid misdiagnosing (sic) him, and send him for outside medical opinions and assistance when necessary.  (*Id.*)  The Corizon medical defendants "failed to act after knowledge of the plaintiff's serious medical needs, grievances ... they allowed [him] to suffer" irreparable harm and pain.  They also violated the ADA and discriminated against him.  (*Id*., ¶ 20.)

Ms. Hollibaugh was Mr. Anderson's Unit Manager.  (*Id*, ¶ 21.)  He claims she is responsible for ensuring that medically restricted and other inmates with special housing codes are appropriately housed.  (*Id*., ¶ 6.)  Mr. Anderson claims she "disrespected" him when referring to him as gay when speaking to another inmate. (*Id.*, ¶ 11.)  He also claims he was unfairly punished because he is African American for an incident of "horseplay" where he locked another inmate, a Caucasian, in a kitchen bathroom.  He was disciplined while the other inmate was not.  (*Id*.)

J. Eckard was the Acting Superintendent, and ultimately the Superintendent, of SCI-Huntingdon after Supt. Bickell.  Mr. Anderson claims Supt. Eckard failed to properly investigate Mr. Anderson's grievance that "a staff member insult[ed]" and called him a name.  (*Id*., ¶ 15.)  Amanda West and Dorina Varner are DOC Central

Office staff who handle DOC grievances at final review.  (*Id.*, ¶ 9.)  Both West and

Varner also failed to investigate this grievance.  (*Id.*, ¶ 16.)

Mr. Anderson claims he "is still having issues with ... Jeshonek and her staff"

at the law library.  (*Id.*, ¶ 14.)  He claims that "only 5 hours or less per week" of law

library time is insufficient to address his complex legal matters.  (*Id.*)

Father Wireman is the head Chaplain at SCI-Huntingdon and responsible for

the coordination of religious services at the institution.  The church is located on the

fourth floor of the institution.  No alternative services are added for disabled,

crippled, handicapped or restricted inmates.  (*Id.*, ¶ 18.)  Father Wireman is charged

with being "deliberately indifferent toward the plaintiff (sic) religious freedoms, by not

resolving issues of the plaintiff's related to his rights to access to the church services

... by forcing the plaintiff to walk up four (4) flights of stairs."  (*Id.*, ¶ 23.)  "He failed to

do her (sic) duties in the role of responsibility as Head Chaplain."  (*Id.*)  He,

Hollibaugh and Eckard allegedly have violated Mr. Anderson's rights under the ADA

by failing to make more programming and other services available to him.

Mr. Anderson collectively references the exhibits of his Amended Complaint

but does not draw any direct connection between the exhibits, his claim, or any

defendant.

## IV.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The question is "not whether [plaintiff] will ultimately prevail ... but whether his complaint [is] sufficient to cross the federal court's threshold."  *Skinner v. Switzer*, 562 U.S. 521, 529 - 30, 131 S.Ct. 1289, 1296, 179 L.Ed.2d 233 (2011) (internal citations and quotations omitted).  In order to cross the federal court's threshold, the complaint need "not [be] a model of the careful drafter's art," nor "pin plaintiff's claim for relief to a precise legal theory."  *Id*., 562 U.S. at 530, 131 S.Ct. at 1296.  This is especially true when a plaintiff is proceeding *pro se*, which requires the court to liberally construe the pleadings. "This means that [courts] are willing to apply the relevant legal principle even when the complaint has failed to name it."  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).  Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.,* ___ U.S. ____, ____, 135 S.Ct. 346, 346, 190 L.Ed.3d 309 (2014).

In order to survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Connelly v. Lane Const. Corp.*, 809

F.3d 780, 787 (3d Cir. 2016).   A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  While the court must accept as true all of the allegations in the complaint, legal conclusions are not entitled to the same assumption of truth.  *Iqbal*, 566 U.S. at 678, 129 S.Ct. at 1949; *see also Connelly*, 809 F.3d at 787.  To be sufficient, a complaint needs to set forth a plausible "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964).  Formulaic recitations of the elements of a cause of action will not suffice.  The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965.  However, the Court has no duty to "conjure up unpleaded facts that might turn a frivolous ... action into a substantial one."  *Id.*, 550 U.S. at 562, 127 S.Ct. at 1969 (citing *O'Brien v. DiGrazia*, 544 F.2d 543, n.3 (1st Cir. 1976)).

When considering a motion to dismiss, a district court generally must limit itself to the complaint, including any attachments thereto, and matters of public record.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  The court may also consider "undisputedly authentic" documents when the plaintiff's

claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.

Where a plaintiff is proceeding *in forma pauperis*, a district court may *sua sponte* dismiss "at any time" it determines the complaint, or any portion thereof, is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013).  In performing this function, a federal district court applies the same standard as applied to motions to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)).

Where a *pro se* plaintiff's complaint is vulnerable to dismissal for failure to state a claim, she must be granted leave to file a curative amended complaint even when the plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile.  *See Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014).  A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

## V.     Discussion

### A.     DOC Defendants' Motion to Dismiss the Supplemental Complaint.

As previously set forth, Mr. Anderson was granted leave to file an amended complaint as to specific claims.  (ECF No. 51, pp. 27 - 28 and 30.)  In response, he filed an Amended Complaint and a Supplemental Complaint to address new claims against new defendants concerning events that transpired since his filing of this lawsuit in August 2014.  (ECF No. 64-1, Supp. Compl.)

Rule 15(d) of the Federal Rules of Civil Procedure governs supplemental complaints and provides in part that "[o]n motion and reasonable notice, the court may, on just terms permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  However, "when the matters alleged in a supplemental pleading have no relation to the claim originally set forth and joinder will not promote judicial economy or the speedy disposition of the dispute between the parties, refusal to allow the supplemental pleading is entirely justified."  6A Charles Alan Wright, et al., *Federal Practice & Procedure: Civil § 1506* (3d ed. April 2016).

Leave to supplement a pleading should generally be granted unless "equitable considerations render it otherwise unjust."  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).  Equitable considerations that may justify refusal of leave to supplement include "undue delay, bad faith, and futility."  *Id.*  Finally, Rule

20 of the Federal Rules of Civil Procedure limits the joinder of defendants.  Rule

20(a)(2) provides:

> *Defendants*.  Persons ... may be joined in one action as
> defendants if:
>
> (A) any right to relief is asserted against them jointly,
> severally, or in the alternative with respect to or arising out
> of the same transaction, occurrence, or series of
> transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants
> will arise in the action.

Fed. R. Civ. P. 20(a)(2)(A) and (B).

Courts have broad discretion in applying Rule 20 to reduce inconvenience,

delay, and added expense to the parties and to the court, and to promote judicial

economy.  The policy of liberal application of Rule 20 is not a license to join

unrelated claims and defendants in one lawsuit.  *See, e.g., Pruden v. SCI Camp Hill*,

252 F. App'x 436 (3d Cir. 2007); *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

The DOC Defendants object to Mr. Anderson's naming of new defendants in

his Amended and Supplemental Complaints.  They claim  naming Eckard,

McConnell, Gomes, Price, Hollibaugh, Wireman, West and Varner, more than two

years after the initiation of his action, is prejudicial to all Defendants and exceeds

the scope of the Court's instruction as to the filing of his amended complaint.  (ECF

No. 70.)  For the reasons that follow, the DOC Defendants' motion to dismiss the

supplemental complaint strictly on the basis that Mr. Anderson named new

defendants will be denied.

Nonetheless, upon examination of the claims asserted against the new defendants in the Amended and Supplemental Complaint, and for reasons set forth more fully below, the new defendants will be dismissed either pursuant to Fed. R. Civ. P. 20 because the claims against them fall outside the Court's March 30, 2016 Order or for failure to state a claim against them.

**B.      Claims against Eckard, Green, Hollibaugh, West and Varner related to Grievance 531643 are Subject to Dismissal.**

Mr. Anderson's claims related to grievance 531643, lodged against Hollibaugh and reviewed by Green, Eckard, West and Varner, concern an issue occurring after the filing of his Complaint, are unrelated to the claims asserted in his original Complaint, and exceed the scope of the Court's March 30, 2016, direction concerning the filing of an amended complaint.  Therefore, they will be dismissed pursuant to Fed. R. Civ. P. 20.

On September 18, 2014, a month after filing his original Complaint,  Mr. Anderson locked another inmate in the kitchen bathroom.  (ECF No. 64-2, pp. 7 - 14.)  When Ms. Hollibaugh, his Unit Manager, spoke to the victim, she questioned him as to whether Mr. Anderson touched him or "did anything sexually" to him.  (*Id*., p. 7.)  The victim claims Ms. Hollibaugh referred to Mr. Anderson as gay.  (*Id*.)  Mr. Anderson filed Grievance 531643 on October 9, 2014 concerning this matter.  (*Id*., p. 8.)  The grievance was reviewed by Connie Green, J. Eckard, Amanda West and

Dorina Varner.  (*Id.*, pp. 7 - 14.)  It was denied at final review on February 13, 2015. (*Id.*, p. 14.)

As noted above, this matter occurred after the filing of the original Complaint. Additionally, the issue raised is completely unrelated to Mr. Anderson's medical, access-to-courts, or ADA claims set forth in his Complaint.  As such, Mr. Anderson cannot meet the requirements of Rules 15(d) and 20.  The inclusion of this new claim against these new defendants would allow Mr. Anderson to layer a new and unrelated claim against new defendants onto his existing lawsuit.  The allegations concerning Grievance 531643 do not arise out of the same transaction, occurrence or series of transactions or occurrences involved in the original Complaint. Accordingly, any claim related to Grievance 531643 against any of the Defendants, including the proposed defendants, is dismissed without prejudice to any right he may have to present it in a separate lawsuit.

### C.    Claims arising outside of the Applicable Statute of Limitations (August 12, 2012 - August 12, 2014).

For the reasons set forth more fully in the Court's March 30, 2016, Memorandum (ECF No. 51, pp. 11 - 17), claims against any Defendant, or proposed defendant, set forth in the Amended or Supplemental Complaint that accrued prior to August 18, 2012, are barred by the statute of limitations.  *See* 42 PA. CONS. STAT. § 5524(7) (2014); *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009); *Lake v. Arnold*, 232 F.3d 360, 368 - 69 (3d Cir. 2000).  They were previously identified by the Court

and dismissed with prejudice.  The Court adopts by reference our prior ruling on these claims, some of which reappear, in Mr. Anderson's Amended Complaint.

### D.     Supervisor Liability

To successfully state a § 1983 claim, a plaintiff must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived the plaintiff of rights, privileges, or immunities secured by the laws or the Constitution of the United States.  *Rehberg v. Paulk*, ___ U.S. ___, ____, 132 S.Ct. 1497, 1501, 182 L.Ed.2d 593 (2012); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014).

To establish liability for the deprivation of a constitutional right, an individual government defendant must have personal involvement in the alleged wrongs; liability cannot be predicated based on the unconstitutional conduct of their subordinates under a theory of *respondeat superior.  Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948; *Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir. 2010).  "It is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct."  *Argueta v. U.S. I.C.E.*, 643 F.3d 60, 71-72 (3d Cir. 2011). This personal involvement can be shown where a defendant personally directs the wrongs, or has actual knowledge of the wrongs and acquiesces in them.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (noting that "a supervisor

may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"). A defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 - 202 (3d Cir. 2000).

As previously discussed in this Court's Memorandum and Order of March 30, 2016, any attempt by Mr. Anderson to establish liability solely based upon supervisory capacities does not by itself support a constitutional claim. Undeterred, Mr. Anderson argues that Defendants Superintendent Bickell and Superintendent Eckard are "responsible for the operation of the prison, conduct of the staff employed at the prison, for the welfare of the inmates in the prison, ensuring that all staff is properly trained/has the correct credentials to perform the job or to be employed, and he was also responsible for the first level of grievance appeals." (ECF No. 64, Am. Compl., ¶ 4 and ¶ 5; *see also* ECF No. 64-1, Supp. Compl., ¶7.) He claims these defendants "failed to act after knowledge of the plaintiff'[s] needs" and were "deliberately indifferent toward [his] religious, serious medical needs, and grievances". (Doc. 64, ¶ 32 and ¶ 41.)  As Defendants correctly note, Mr. Anderson fails to specify how each supervisory defendant violated his constitutional rights by either personally participating in the alleged violations, or by establishing and maintaining a policy, practice or custom that caused his constitutional harm. *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.,* 372 F.3d 572, 586 (3d Cir. 2004).  Mr. Anderson's claims against these defendants are premised on their supervisory roles.  Furthermore, Mr. Anderson has not delineated the specific action

of either of these defendants in connection with his denial of medical care, lack of access to the law library, or his ADA claim that would impose personal liability. Therefore, Mr. Anderson's claim of supervisor liability against Superintendent Bickell and Superintendent Eckard is dismissed.

### E.    Defendants Eckard, West and Varner's Role in the Processing of Inmate Grievances.

A state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a complaint or grievance, does not establish their personal involvement in the underlying unconstitutional conduct.  *See Rode*, 845 F.2d at 1207 - 08 (finding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) (nonprecedential) (finding "an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement" requirement); *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (nonprecedential) ("The District Court properly dismissed these [supervisory] defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (nonprecedential) (failure of

prison official to process administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved).

Mr. Anderson cannot maintain a constitutional claim based upon his perception that his various grievances were not properly processed, that they were inadequately investigated, or denied, or that the grievance process itself is inadequate.  Thus, to the extent Mr. Anderson claims Superintendent Bickell, K. Nicole, Superintendent Eckard, C. Green, A. West or D. Varner, failed to satisfactorily respond to his grievances and not their personal involvement in the underlying alleged constitutional violation, claims against these defendants will be dismissed without leave to amend.

**F.     Claims of Deliberate Indifference to Mr. Anderson's Alleged Medical Needs.**

Both Ms. Parkes and the DOC Defendants seek dismissal of the Amended Complaint and Supplemental Complaint on the grounds that Mr. Anderson failed to allege their personal involvement in the alleged acts or omissions giving rise to his Eighth Amendment medical claims.  The Court, pursuant to our screening power, will also examine the Eighth Amendment medical claims asserted against the new unserved medical defendants (McConnell, Gomes and Price).

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d

Cir. 1999).  In order to be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.  *Monmouth Cnty Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, if "unnecessary and wanton infliction of pain" results as a consequence of denied or delayed necessary medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.  *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003) (internal citations and quotations omitted).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain," *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976), and can also be evidenced by the denial of prescribed medical treatment, the denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).  A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994).

A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . ." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).  Likewise, a prisoner's disagreement with his medical treatment is insufficient to establish a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).  Generally "as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

For the purpose of Eighth Amendment medical claims, absent any reasons to believe, or actual knowledge that prison medical staff are mistreating, or not treating, a prisoner, non-medical prison staff cannot be held deliberately indifferent for failing to intervene in the inmate's medical treatment. *Parkell v. Danberg*, 833 F.3d 313, 336 - 37 (3d Cir. 2016) (citing *Durmer*, 991 F.2d at 69 and *Spruill*, 372 F.3d at 236). However, the Third Circuit Court of Appeals has found "deliberate indifference" in a variety of circumstances, including where a prison official: (1) know of an inmate's need for medical treatment but intentionally refuse to provide it; (2) where necessary medical treatment is delayed for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended medical treatment. *Rouse*, 182 F.3d at 197.  A deliberate indifference claim can also be made out against a supervisor,

which requires showing that "(1) [the supervisor's policies] created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy [ ]." *Beers–Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).

In short, in order to show a violation of Mr. Anderson's Eighth Amendment right to medical treatment, he must identify "acts or omissions [on the part of the defendants] sufficiently harmful to evidence deliberate indifference to [his] serious medical needs." *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292.  Defendants can only be held liable under § 1983 for a deprivation of a constitutional right if they had some "personal involvement" in it.  *Rode*, 845 F.3d at 1207.

In the Court's March 30, 2016, Memorandum, Mr. Anderson's Eighth Amendment medical claims against many of these defendants were dismissed, in part, due to his failure to allege the personal involvement of the individual defendants.  *See* ECF No. 51, pp. 18 - 20.  In drafting his amended complaint, Mr. Anderson was cautioned that "his allegations should be sufficiently specific as to time and place, and should identify the specific person or persons responsible for the deprivation of his constitutional rights and what each individual did that lead to the deprivation of his rights." (*Id*., p. 27.)   Additionally, to avoid the inclusion of unrelated claims, the Court advised him to limit his claims to events that took place at SCI-Huntingdon between August 18, 2012 and August 18, 2014.  (*Id*., pp. 27 - 28.)  Unfortunately, Mr. Anderson failed to follow the Court's direction.  His

Amended and Supplemental Complaint fail to allege any of the defendants' personal involvement in the alleged violation of his Eighth Amendment rights at SCI-Huntingdon between August 18, 2012 and August 18, 2014.  Aside from  naming the Defendants in the Amended and Supplemental Complaints Mr. Anderson does not identify how, where, when or what each Defendant did to violate his rights with respect to his medical care.

Nowhere in the Amended Complaint does Mr. Anderson identify what action Ms. Parkes took with respect to providing, denying or interfering with prescribed medical care.  He also fails to identify a specific instance in which she denied him medical care for a serious medical need.  The same is true with respect to his claims against M. McConnell, M. Gomes and P. Price who are named for the first time in the Supplemental Complaint.  (ECF No. 64, p. 2.)  While Mr. Anderson asserts that he was denied insulin for three years and appropriate care for his wrist and knee injuries, he does not identify which medical employees were personally involved in withholding insulin from him, refusing to treat him, or disregarded medical care prescribed by a treating physician.  Examination of the documents attached to his Amended Complaint show disagreement with prescribed care, not denial of medical care.  The same holds true for his claims that his triglyceride levels went unaddressed.  To the extent Mr. Anderson claims he was denied a medical lay in and thus "forced to work" in the kitchen only two days after his first wrist surgery or receive a misconduct, and thus re-injured his wrist, he does not identify which defendant denied his request for a medical lay-in, or threatened him with a misconduct if he failed to work with his cast on his hand, or refused to address his

medical concerns prior to him going to work.  He also does not suggest any defendant denied him medical attention once he re-injured his wrist while working in the kitchen.  Likewise, although Mr. Anderson notes he underwent a second surgical procedure on his wrist, he does not identify any defendant as withholding treatment, pain medication, or delaying his wrist surgery for non-medical reasons.  Additionally, Mr. Anderson also fails to identify any of the DOC Defendants, none of whom are medical professionals, who denied or delayed his medical care for non-medical reasons.  While Showalter and Price, both served as Corrections Health Care Administrators and responded to Mr. Anderson's medical requests from time to time, they did so in their supervisory roles and not as treating medical care providers aware that he was receiving treatment.  Moreover, documents attached to the Amended Complaint confirm they referred him to his treatment team to further discuss his medical inquiries.  The fact that Mr. Anderson wanted to be seen by a doctor rather than a Physician's Assistant, or that following returning to work he reinjured his wrist, or that he has only been given braces and pain killers for his knee ailments rather than surgery, does not suggest that Showalter or Price knew or should have known that he was not receiving adequate care for his various conditions.  Mr. Anderson simply has failed to identify the acts or omissions of each named Defendant that would evidence their deliberate indifference to any medical condition or serious medical need.  Mr. Anderson's medical claims as to all Defendants named in the Amended and Supplemental Complaint will be dismissed with prejudice.

### G.    Access to Courts

A prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury.  *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996).  To meet this requirement, a plaintiff must show that the actions of the prison officials hindered the prisoner's efforts to pursue a nonfrivolous claim. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008); *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 2187, 153 L.Ed.2d 413 (2002).

Mr. Anderson names B. Jeshonek, SCI-Huntingdon's Library Supervisor, as a Defendant.  (ECF No. 64, p. 12.)  He claims she is responsible for the supervision of the library, its staff, and "ensuring that all of the inmates at SCI-Huntingdon have access to the courts and law library services."  (*Id*.)  However, Mr. Anderson fails to allege, what action, if any, B. Jeshonek took that interfered with his ability to access the courts.  In his Amended Complaint, he states he has experienced "several issues with law library attendants" and that he has been "erroneously" removed from the schedule on days and times he did not request, and scheduled on days he had to go to work, and constantly scheduled for times that "do not fit his schedule," (*Id*, p. 3).  Documents submitted with the Amended Complaint demonstrate Mr. Anderson frequently requested, and was scheduled, and did appear to use the law library.  His dissatisfaction with his lack of ability to dictate, or pick-and-chose, his law library hours does not demonstrate that anyone or B. Jeshonek interfered with his access to the courts.  Where his scheduling requests could be accommodated,

staff rescheduled him per his request.  Nonetheless, Mr. Anderson's access to courts claim against B. Jeshonek fails because he does not allege that these scheduling issues hindered his ability to pursue a nonfrivolous lawsuit.

To the extent Mr. Anderson claims that his medical prescription for a bottom bunk/bottom tier housing assignment was a "hinderance [that] force[d] the plaintiff to delay filing this lawsuit" (ECF No. 64, p. 3) because he was "under penalty of receiving a misconduct," (*Id*.) for traversing past the ground floor of the institution, fails to demonstrate the requisite injury necessary to state an access to courts claim. Mr. Anderson does not allege which defendants, or how the defendants, prevented his access to the law library simply based on his housing assignment.  To the contrary, the sixty four pages of attachments to his Amended Complaint demonstrate Mr. Anderson's constant use of the law library.  He does not allege and has not submitted a single document to suggest he ever received, or was threatened with, a misconduct if went to the law library simply because of his housing assignment.  Aside from his conclusory assertions that he would receive a misconduct if he went past the ground floor of the institution or that he was otherwise "restricted" from using the law library, there is no evidence to support his assertions of interference with his access to the law library.  Accordingly, Mr. Anderson's access to the courts claim will be dismissed with prejudice.

H.    ADA CLAIM

Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall by reason of such disability, be excluded from participation in or be denied the benefits of the services or activities of a public entity or be subjected to discrimination by such entity."  42 U.S.C. § 12132.  To establish a violation of Title II of the ADA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participating in, or denied the benefit of, a public entity's services, programs or activities; and that (3) such exclusion, denial of benefits, or discrimination was by reason of disability.  *See*  42 U.S.C. § 12132; *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012).  The ADA defines a disability as a physical or mental impairment that substantially limits one or more of the major life activities; a record of such an impairment; or being regarded as having such an impairment.  *See* 42 U.S.C. § 12102(1); *Maresca v. Blue Ridge Communications,* 363 F. App'x 882, 884 (3d Cir. 2010).  Determining whether Plaintiff's disability limits a major life activity, the Court must examine the facts alleged in the Amended Complaint as such an assessment must be made on a case-by-case basis.  *George v. Pennsylvania Department of Corrections*, No. 09–1202, 2010 WL 936778, at *7 (M.D.Pa.  Mar.11, 2010).

The United States Supreme Court has held that state prisons fall squarely within the statutory definition of "public entity" in Title II of the ADA.  *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, 118 S.Ct. 1952, 1954 - 55, 141 L.Ed.2d 215 (1998).  However, the term "public entity," only applies to entities and not

-31-

individuals.  *See* 42 U.S.C. § 12313(1).  Therefore, individuals may not be sued

under the ADA.  *See Emerson v. Thiel Coll*., 296 F.3d 184, 189 (3d Cir. 2002) (Third

Circuit Court of Appeals cites with approval "decisions of other courts of appeals

holding that individuals are not liable under Titles I and II of the ADA.").  Likewise,

public officials, such as correctional employees, cannot be held liable in their

individual capacities for monetary damages under Title II of the ADA.  *See Bowen v.*

*Wetzel*, No. 16-3036, 2017 WL 35712, at *2 (3d Cir. Jan. 4. 2017) (*per curiam*)

(affirming district court's dismissal of amended complaint, noting that "the District

Court could have properly followed the holdings of those circuits which have

concluded that there is no individual damages liability under Title II of the ADA,

which provides an additional basis to affirm the dismissal of this claim."); *Matthews*

*v. Pa. Dep't of Corr.,* 613 F. App'x 163, 169-170 (3d Cir. 2015) (nonprecedential)

("With respect to Corrections Officers Hunter and Arnone, we agree with the Court

of Appeals for the Second and Eighth Circuits that Title II of the ADA does not

provide for suits against state officers in their individual capacities.").  However,

"federal ADA claims for prospective injunctive relief against state officials" in their

official capacities are permitted to continue.  *Koslow v. Pennsylvania*, 302 F.3d 161,

179 (3d Cir. 2002).  Finally, an ADA claim requires the applicant to show that

challenged action resulted from discriminatory animus based upon alleged disability.

*See Brown v. Pennsylvania Department of Corrections*, 290 Fed. Appx. 463, 467

(3d Cir. 2008).

Mr. Anderson seeks compensatory and punitive damages against the DOC Defendants for violating his rights under the ADA.  (ECF No. 64, p. 18.)  The DOC Defendants argue that Mr. Anderson has failed to state a claim under the ADA because they are not individually liable under the ADA.  (ECF No. 68, pp. 12 - 13.)  The Court agrees.  *See Bowen,* 2017 WL 35712, at *2; *Matthews,* 613 F. App'x at 169-170.  Therefore, the Court dismisses the ADA claims against the DOC Defendants in their individual capacities as they are not public entities under the ADA.  However, this is not the end of the Court's inquiry.

Although Mr. Anderson does not specify in either his Amended or Supplemental Complaint whether he is suing the DOC defendants in their individual or official capacity, or both, given the Court's requirement to liberally construe *pro se* litigant's pleadings, we will construe his claims against Defendants in their official capacities as well.  Title II ADA claims against state prison officials in their official capacities, when such claims are for prospective injunctive relief, are cognizable. *See Koslow v. Pennsylvania*, 302 F.3d 161, 179 (3d Cir. 2002).  However, Mr. Anderson does not seek injunctive relief against these defendants, he seeks compensatory and punitive damages.[6]  Thus, he fails to state a viable ADA claim.

---

[6]  Claims for punitive damages may not be awarded in private suits brought under the ADA.  *Barnes v. Gorman*, 536 U.S.181, 189, 122 S.Ct. 2097, 2103, 153 L.Ed.2d 230 (2002).

**I.     Further Amendment of the Claims against the Defendants would be Futile.**

"[I]f a complaint is vulnerable to [Rule] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).  In this instance, the Court believes that any further amendment of Mr. Anderson's claims against the Defendants would be futile as Mr. Anderson was advised that his original Complaint was deficient, and was given the opportunity to cure the identified deficiencies, and then filed an Amended and Supplemental Complaint that largely had the same faults as the original Complaint.  Accordingly, the Court will not grant Mr. Anderson leave to amend further as doing so would be futile.  *Shelley v. Patrick*, 481 F. App'x 34, 36 (3d Cir. 2012) (nonprecedential).

An appropriate order follows.

/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**

**Date:  February 28, 2017**

-34-